203 F.Supp.2d 1032 (2002)
In re BRIDGESTONE/FIRESTONE, INC. TIRES PRODUCTS LIABILITY LITIGATION.
Wendella Nisbett, individually, and as Personal Representative of the Estate of David Keith Nisbett, II, Plaintiffs,
v.
Bridgestone Corp., a Japanese corporation; Bridgestone/Firestone, Inc., an Ohio corporation; Ford Motor Company, a Delaware corporation; and Jarrett-Bodiford Ford, Inc., a Florida corporation, Defendants.
Robertina Rodriguez, as Personal Representative of the Estate of Jose M. Villagomez, Individually, and as Mother and Natural Guardian of Alejandro Villagomez and Jose J. Villagomez, Her Minor Children, Plaintiffs,
v.
Bridgestone Corp., a Japanese corporation; Bridgestone/Firestone, Inc., an Ohio corporation; Ford Motor Co., a Delaware corporation; Family Ford, Inc., a Florida corporation, and Morgan Tire & Auto, Inc., a Florida corporation, Defendants.
Nos. IP 00-9373-C-B/S, IP 01-5446-C-B/S, IP 01-5447-C-B/S.
United States District Court, S.D. Indiana, Indianapolis Division.
June 12, 2002.
*1033 Don Barrett, Barrett Law Office Pa, Lexington, MS, Victor Manuel Diaz Jr, Podhurst Orseck Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, William E. Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for Plaintiffs.
John H. Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P. Byron, Bingham McHale, LLP, Indianapolis, IN, Mark Herrmann, Jones Day Reavis & Pogue, Cleveland, OH, Thomas S. Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Mark Merkle, Krieg Devault LLP, Indianapolis, IN, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Colin P. Smith, Holland & Knight LLP, Chicago, IL, Thomas G Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

ORDER GRANTING MOTIONS FOR REMAND AND AWARDING COSTS
BARKER, District Judge.
On June 29, 2001, two Plaintiffs filed personal injury and wrongful death suits against Defendants for injuries suffered as the result of unrelated rollover accidents involving Ford vehicles and Firestone tires. Defendants removed (or consented to removal of) the cases to federal court on August 1, 2001. Both Plaintiffs filed Motions to Remand. These cases were later transferred to our court for consolidated and coordinated proceedings pursuant to 28 U.S.C. § 1407 by order of the Judicial Panel on Multidistrict Litigation. For the reasons set forth below, Plaintiffs' motions are GRANTED, and the cases are REMANDED to the circuit courts in the state of Florida from which they were removed.

Factual and Procedural Background

Rodriguez Case
The Complaint alleges that, on May 14, 2000, in Monterrey, Mexico, Plaintiff Robertina Rodriguez and her husband, Jose *1034 M. Villagomez, were passengers in their Mercury Mountaineer. Mr. Villagomez's brother, Jesus Villagomez Baca, was driving the vehicle. Other passengers included Imelda Baca, the Plaintiff's mother-in-law, Jesus Jurado, her husband's cousin, and Jose J. and Alejandro Villagomez, Ms. Rodriguez's minor sons. An AT steel-belted radial tire on the vehicle experienced a belt separation causing the vehicle to roll-over. Mr. Villagomez was killed. Ms. Rodriguez and her two children suffered severe permanent injuries.
Ms. Rodriguez on behalf of herself, as guardian of her two sons, and as representative of her husband's estate, filed suit in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida against Bridgestone Corp. ("Bridgestone"), Bridgestone/Firestone, Inc. ("Firestone"), Ford Motor Co. ("Ford"), and Family Ford, Inc. ("Family Ford"), the local dealer who sold the Mercury Mountaineer to her and her husband. She also sues Morgan Tire & Auto, Inc. ("Morgan Tire") alleging that the tire distributor had inspected the subject tire about three weeks prior to the accident and did not recommend its replacement. The Complaint contains a number of counts including negligence causes of action against Firestone, Bridgestone, Ford, and Morgan Tire and strict liability claims against Firestone, Ford and Family Ford.
Most important for our purposes, Ms. Rodriguez sues Ford and Firestone for violations of the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. § 772.101, et seq. (hereinafter "state civil RICO"). In its argument that there is federal question jurisdiction, Defendant Ford claims that "Plaintiffs' state law Civil RICO count is expressly predicated upon a substantial, disputed question of federal law  that is, whether Defendants Ford and Firestone had or have a duty to provide notice of defects in their respective products or should have recalled their products under the provisions of the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30101, et seq." Notice of Removal ¶ 4.[1]

Nisbett Case
The Complaint alleges that, on June 9, 2000, David Keith Nisbett, II, son of Plaintiff Wendella Nisbett, was a passenger in a Ford Explorer equipped with Firestone tires traveling in Sarasota County, Florida. Christopher John Tankson, son of the owners of the vehicle, John and Annie L. Tankson, was driving the vehicle. Orlando Archibald, Paul Tessier, and Shelton Minto were also passengers in the Explorer. One of the tires experienced a belt separation and the vehicle rolled over. David Keith Nisbett, II died as a result of the accident.[2] Shelton Minto, the plaintiff in a related case before us that has settled, Minto v. Bridgestone/Firestone, Inc., IP 01-C-5329-B/S, was injured severely in this accident. Minto Complaint ¶ 14.
Ms. Nisbett filed suit as representative of her son's estate in the Circuit Court of the Sixth Judicial District in and for Pinellas County, Florida against Bridgestone, Firestone, Ford, and Jarrett Bodiford Ford, Inc. ("Jarrett-Bodiford"), the local *1035 dealer who sold the vehicle to the Tansksons. The allegations in the Nisbett Complaint are nearly identical to those brought by Ms. Rodriguez; however, no negligence allegations are brought against a tire dealership in the Nisbett case.

Legal Analysis

No Removal on Basis of Federal Question Jurisdiction
In both cases, Ford's[3] removal is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. When the basis of removal is federal question jurisdiction, the plaintiff's cause of action must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Our task is to discern the parameters of "arising under" jurisdiction and to apply those limits to the procedural facts at hand. The most common definition states that "[a] suit arises under the law that creates the cause of action." Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 8-9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)(Holmes, J.)). Defendant Ford does not and cannot argue that Plaintiffs are suing for relief under a federal cause of action. However, this point does not end the inquiry.
A claim also "`arises under' federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law."" Franchise Tax Board, 463 U.S. at 9, 103 S.Ct. 2841. As noted earlier, Ford contends that if Plaintiffs are to succeed in their state civil RICO claims, they must establish that the Safety Act required Ford and Firestone to provide notice of the alleged defects in their products or to recall the products and that Defendants failed to take these actions. Notices of Removal ¶ 4. In support of this argument, Ford points to the various references to the Safety Act and federal entities included in the complaints. Looking at the "plaintiffs['] statement of [their] own claims in the bill or declaration," as we must under the "well-pleaded complaint" rule, Franchise Tax Board, 463 U.S. at 10, 103 S.Ct. 2841, we find that Plaintiffs do indeed refer to federal standards in their allegations covering the elements of Florida civil RICO claims. For instance, in their allegations of relatedness and continuity,[4] Rodriguez and Nisbett allege that Firestone "has likewise failed to give notice of the defects in its product to the Secretary of Transportation or to recall the defective tires ..., notwithstanding a clear statutory duty to do so." Rodriguez Complaint ¶ 145; Nisbett Complaint ¶ 140 (emphasis added). Similarly, in their allegations that Ford and Firestone were culpably negligent by failing to protect the public from the products they knew were dangerous, Plaintiffs state that even after Defendants became aware of numerous deaths in the Middle East and South America associated with the vehicles and tires, "[b]oth Ford and Firestone made a conscious and concerted decision not to notify [NHTSA] or U.S. consumers of the tire and vehicle problems ... or of the tire replacement programs in those [regions]." Rodriguez Complaint ¶ 125; Nisbett Complaint *1036 ¶ 120. Finally, the complaints cite two provisions of the Safety Act in their recitations of the "relevant statutory provisions." Rodriguez Complaint ¶¶ 60-61; Nisbett Complaint ¶¶ 55-56.
A rule providing that mere mention of a federal statute in a complaint based on a state cause of action confers federal question jurisdiction would be a simple rule to apply, but it is not the law and cannot aid Ford's removal effort. Mullins v. Lobdell Emery, Inc., 2002 WL 459040, at *3 (S.D.Ind.2002) ("But the mere mention of a federal statute as the standard against which [defendant] took some action is not enough to invoke federal jurisdiction."). Instead, as Ford acknowledges, when the claim is one of state law, "federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state law claims." Franchise Tax Board, 463 U.S. at 13, 103 S.Ct. 2841 (emphasis added). Ford contends that Plaintiffs "have voluntarily placed at the heart of their complaint[s] repeated allegations centering on whether Ford violated its duties under [the Safety Act]," and that the importance of these federal issues provides a basis federal question jurisdiction. Ford Opps. at 6 (emphasis added).
To buttress its argument, Ford points to a recent Eleventh Circuit case, Ayres v. General Motors Corp., 234 F.3d 514 (11th Cir.2000). In that case, the plaintiffs claimed that General Motors and Delco Electronics Corporation violated Georgia's civil RICO statute by failing to notify consumers of defects in an automobile part made by Delco and placed in GM automobiles. To satisfy the predicate act requirement of the state civil RICO law, the plaintiffs contended that the failure to notify consumers was a violation of the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1342. Ayres, 234 F.3d at 518-19. In the Ayres plaintiffs' argument, the duty to notify consumers (the breach of which constitutes a mail and wire fraud violation) arose from the disclosure requirements of the Safety Act. Id. at 519. The Eleventh Circuit found that the district court had federal question jurisdiction over the case because:
the case involves both (1) the necessity for Plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2) the fact that proof of the alleged federal mail and wire fraud crimes involves a very substantial federal question [namely, whether the disclosure duty of the Safety Act was violated].
Id. at 520 (emphasis added). Our cases are distinguishable from Ayres because they involve only the second of the issues relied upon in Ayres. The state civil RICO counts of Ms. Rodriguez and Ms. Nisbett differ from that of the Ayres plaintiffs because Plaintiffs here omit the portion of the claim founded on violations of the federal mail and wire fraud statutes. In our cases, the predicate acts for the alleged RICO violations are numerous counts of state-law-based manslaughter, rather than any federal crimes, like mail and wire fraud. Rodriguez Complaint ¶¶ 148-183; Nisbett Complaint ¶¶ 143-178.
Moreover, by not invoking federal mail and wire fraud violations and only citing to the Safety Act, Plaintiffs' complaints do not refer to any federal statutes creating a private right of action. Under Supreme Court and Seventh Circuit precedent, this distinction is crucial. In Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court rejected federal question jurisdiction over a case in which the plaintiffs brought a personal injury *1037 action alleging, in part, that the drug causing the injuries was "misbranded" in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq. The parties agreed and the Court found that there was no federal cause of action for FDCA violations. Id. at 810, 106 S.Ct. 3229. Without a private right of action, the Court concluded, it could not find a basis for federal jurisdiction. The Court reasoned "that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently `substantial' to confer federal-question jurisdiction." Id. at 814, 106 S.Ct. 3229.
Defendant attempts to dodge this precedent by arguing that while Congress did not create a private right of action under the Safety Act, it did provide for substantial public participation. Ford's Opps. at 9. For instance, the Safety Act does permit "any interested person" to file a petition with the Secretary of Transportation requesting that the Secretary begin a proceeding to decide whether to issue an order requiring a manufacturer to give notice under the Act. See 49 U.S.C. § 30162. Ford, however, cites to no case where public participation in administrative hearings is regarded as akin to a private right of action for the purpose of conferring federal question jurisdiction on a state-law claim that refers to federal law. In the absence of such authority, we find that the presence in this case of the Safety Act as a standard against which Defendants' actions could be judged is not the kind of "substantial" question of federal law required by Franchise Tax and Merrell Dow in order to confer federal question jurisdiction. See also Fournier v. Lufthansa German Airlines, 191 F.Supp.2d 996, 1001 (N.D.Ill.2002) (while court may need to consider possible violations of various federal airline laws and regulations to resolve plaintiff's state claims, these "federal questions ... are not `substantial' in the sense that they confer federal jurisdiction").
Ford returns to Ayres in another attempt to negate the importance of this distinction. A footnote in the Eleventh Circuit opinion follows the excerpt quoted above and states:
Because we rely on both of the facts mentioned in the text, we need not in this case decide whether either, by itself, is sufficient to confer federal question jurisdiction.
Ayres, 234 F.3d at 520 n. 11 (emphasis in original). Thus, according to Ford, "whether breaches of any alleged duty of disclosure under the Safety Act give rise to criminal liability is a[sic] `substantial enough to confer federal question jurisdiction.'" Defs.' Opp. at 13. Clearly, unlike the Eleventh Circuit, we are faced with the situation where we must decide whether only one of the factors-that is, whether the disclosure duty of the Safety Act was violated-is sufficient to establish federal question jurisdiction. However, because we rely on Merrell Dow, for the reasons stated above we cannot agree with Ford's characterization of Ayres. Indeed, another footnote in Ayres rejects the plaintiffs' argument based on Merrell Dow only as to the part of the claim based on the federal mail and wide fraud statutes. Ayres, 234 F.3d at 519 n. 8.[5] The Eleventh Circuit *1038 disagrees with the Ayres plaintiffs' contention that there is no private right of action under the federal mail and wire fraud statutes. Id. The appellate court notes that, in fact, these fraud crimes are enforceable through a private federal RICO action, and concludes, on this basis that Merrell Dow does not preclude federal jurisdiction over the state-law based claim. Id. (citing 18 U.S.C. §§ 1961(1)(B), 1962, 1964(c)). The same cannot be said for Safety Act violations.

No Removal under All Writs Act
Firestone, in its Consents to Removal, argues that these actions are removable under the All Writs Act, 28 U.S.C. § 1651(a), which provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." Defendant argues that permitting parallel federal and state proceedings in personal injury cases could lead to inconsistent and conflicting rulings and would severely limit the Court's ability to manage the MDL effectively. Consents to Removal at 3-4 (citing Neuman v. Goldberg, 159 B.R. 681 (S.D.N.Y.1993)). However, we have issued no orders specific to these cases that could be frustrated by the litigation of Plaintiffs' claims in state courts.[6] Furthermore, Firestone does not contend that we have an independent basis for jurisdiction in these cases if we find, as we have, that there is no federal question jurisdiction. As such, we conclude that exercising jurisdiction under the All Writs Act is not warranted. See In re The Application of the County Collector of the County of Winnebago, Illinois, 96 F.3d 890, 903 n. 20 (7th Cir.1996) ("It is well-settled that the All Writs Act does not provide federal courts with an independent grant of jurisdiction.") (internal quotation omitted).

Award of Costs and Expenses
Plaintiffs' Motions for Remand seek costs, pursuant to 28 U.S.C. § 1447(c) which permits recovery of "costs and any actual expenses, including attorney fees, incurred as a result of the removal." Plaintiffs are entitled to these costs. Ms. Rodriguez's and Ms. Nisbett's sound and straightforward arguments for remand prevailed, and "as prevailing parties, [they] are presumptively entitled to recover attorneys' fees incurred in [seeking remand]." Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 411 (7th Cir.2000). Defendants make no arguments to overcome this presumption, and it is doubtful that they could. See id. at 410 ("§ 1447(c) is not a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party.") (emphasis in original).

Conclusion
For the reasons set forth above, Plaintiffs' Motions for Remand are GRANTED and the cases are hereby REMANDED to the state courts of Florida from which they were removed originally. In addition, Plaintiffs are ORDERED to submit, on or before June 26, 2002, their documentation of the costs and fees incurred in preparing *1039 and submitting the motions for remand and their briefs in support of the motions. Defendants' response, if any, to Plaintiffs' submissions of costs must be tendered on or before July 3, 2002.
NOTES
[1] Under this theory of federal jurisdiction, the remaining counts could be heard in federal court as part of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.
[2] Ford's recitation of the facts in its Notice of Removal includes an insensitive error. Rather than acknowledging the death of Plaintiff's son, David K. Nisbett, II, the removal notice states that Ms. Nisbett's husband, David Nisbett, was killed in the accident. Notice of Removal ¶¶ 1-2. In fact, Ms. Nisbett's husband, Mr. Nisbett, is deceased, but the Complaint recites this fact to establish that she is the sole personal representative of her son's estate. See Complaint ¶¶ 3-4. The Complaint does not explain how or when Mr. Nisbett passed away.
[3] The other Defendants consent to removal on this basis. In addition, Firestone proposes another basis for removal addressed below.
[4] Florida civil RICO claims are comprised of a number of elements, including culpable negligence and knowledge, relatedness and continuity in pattern of criminal activity, and predicate acts or incidents. Fla. Stat. § 772.103(3); Jackson v. Bellsouth Telecommunications, Inc., 181 F.Supp.2d 1345, 1357 (S.D.Fla.2001).
[5] We admit some confusion as to how the Eleventh Circuit finessed the apparent conflict between footnotes 8 and 11 in the Ayres opinion. However, the Seventh Circuit painstakingly applies Merrell Dow, and we are bound by its decisions. International Armor & Limousine Co. v. Moloney Coachbuilders, Inc., 272 F.3d 912, 917 (7th Cir.2001) (because the Lanham Act does not afford any remedy or make a state law of contract remedy any easier to obtain, it does not confer federal jurisdiction over a claim arising under the state law of contracts); see also Spearman v. Exxon Coal USA, Inc., 16 F.3d 722, 732 (7th Cir.1994) (Rovner, J., dissenting) (dissenting on ground that majority inappropriately applied Merrell Dow to what was actually a worker's compensation case and should not have been in federal court, pursuant to 28 U.S.C. § 1445(c)).
[6] Firestone points out that the accident giving rise to Ms. Nisbett's claims also gave rise to the Minto case and that separate state and federal proceedings in these cases could yield inconsistent results, despite very similar facts. We note that Minto v. Bridgestone/Firestone, Inc. et al., IP 01-5329-C-B/S, settled before the issuance of any substantive rulings. Thus, this concern is alleviated.